WENDT *v.* VILLAGE OF RICHMOND.

1. TRIAL—DIRECTING VERDICT—VILLAGES.

In an action against a village for constructing open ditches and permitting sewage to collect in them in the vicinity of plaintiff's home, producing sickness, etc., it was proper to submit to the jury, on conflicting testimony, the question whether or not plaintiff's sickness was caused by the neglect of defendant.

2. SAME—WEIGHT OF EVIDENCE—NEW TRIAL.

  The court properly refused to charge the jury, as requested by
    defendant, that the weight of evidence was so overwhelming
    in defendant's favor that the court would be compelled to set
    aside a verdict for plaintiff and grant a new trial.

3. SAME—REQUEST TO CHARGE.

  Nor did the court err in refusing a request to charge the jury
    that the defendant was not chargeable with notice of the
    alleged nuisance until after the damage had been suffered.

4. TRIAL—MOTION FOR NEW TRIAL—WEIGHT OF EVIDENCE.
  *Held*, that the verdict was not against the weight of the evi-
    dence.

5. SAME.

  A new trial should not be granted for failure to be sufficiently
    specific in instructing the jury, when no requests were
    offered by appellant on the point raised.

6. SAME—REQUESTS TO CHARGE—DEFENDANT'S CLAIM.

  It was not error to refuse a very lengthy statement of defend-
    ant's claim, contained in a request to charge, which included
    disputed statements of fact and argumentative claims.

7. CONTRIBUTORY NEGLIGENCE—NUISANCE—DRAINS AND SEWERS.
  A request to charge that plaintiff could not recover if her in-
    jury was caused by her own fault or want of reasonable care,
    was sufficiently covered by a charge that if the unsanitary
    condition of plaintiff's premises materially contributed to her
    injury, she could not recover.

8. NUISANCE—NOTICE—CHARGE TO JURY.

  Instructions to the jury were proper, that if the village knew
    of any improper condition as to its drains, claimed by plain-
    tiff to have existed, or received information of it through its
    officers, so that the fact was brought home to the municipal-
    ity, the notice was sufficient.

Error to Macomb; Erskine, J. Submitted October 26,
1910. (Docket No. 122.) Decided December 30, 1910.

Case by Emma Wendt against the village of Richmond
for negligent maintenance of a defective drainage system.
Judgment for plaintiff. Defendant brings error. Af-
firmed.

*Warren S. Stone (James G. Tucker,* of counsel), for appellant.

*William T. Kelly (John A. Weeks,* of counsel), for appellee.

HOOKER, J.   The defendant, a small village, has appealed from a verdict and judgment of $1,500, recovered by the plaintiff in an action for injury to her health.  She charges that ditches or drains within the village, and made by the village, were allowed to collect filth from sinks, water-closets, etc., and discharge the same into other open drains, thereby causing the refuse to be conveyed to a ditch in front of her home, to which there was no adequate outlet, where it remained, giving off foul smells and malaria, causing her illness and discomfort. The defendant denied that it had done more than to construct highway or street ditches to carry off surface water, and alleged that it had never authorized or knowingly permitted any one to discharge slops or any kind of filth into said ditches.  It also denied any knowledge or notice of the condition stated by plaintiff, and claimed that if plaintiff suffered any injury, it was due to the condition of her own premises, and the act of a neighbor in draining slops, etc., into said ditch, for which the village is not in any way to blame.  In his charge to the jury, the learned circuit judge said that if the defendant caused, or knowingly permitted, these things to be collected by its ditches and conveyed to plaintiff's premises, without providing an outlet, it would be liable, after the lapse of a reasonable time within which to remedy the condition, for such injury as should be caused to her health thereby, unless the unsanitary condition of her own premises contributed materially.

With this brief outline, we will examine such of the assignments of error as raise questions of importance in this controversy.  As they are numerous, we will take them up by subjects as counsel have discussed them, though perhaps not in the same order.

**Direction of Verdict.** Counsel assert that the court should have directed a verdict for the defendant, and that the refusal of his first three requests was error. This implies that in his opinion the plaintiff did not make a *prima facie* case, for if she did, the case should not have been taken from the jury.

We find very little said in the brief upon this subject, but counsel's position is reflected by his requests:

"(1) Under the plaintiff's declaration and the claims of counsel presented at the opening of the case, plaintiff could only recover for personal sickness and ill health caused by noisome, noxious, offensive, and unwholesome smells, vapors and stenches arising from filth and sewage deposited in the highway ditch in front of her premises, creating there a nuisance through the wilful or negligent acts of the village of Richmond. She could not recover for any discomfort or inconvenience caused her in the use of her house by such noxious smells, etc. She could not recover for any contamination of her well. She could not recover in any event, if her own negligence and lack of ordinary care caused or contributed materially to her trouble. Nor could she recover, even if a nuisance were created in the highway in front of her house, if ordinary care on her part would have avoided any evil results from that nuisance, for the reason that the testimony in the case is overwhelming that the village of Richmond neither wilfully nor knowingly caused or permitted the alleged nuisance to be created. A fair consideration of the entire testimony in the case leads to the conclusion that there is no sufficient evidence to warrant any finding that plaintiff's sickness was caused by noisome, noxious, offensive, or unwholesome smells and stenches arising from a ditch in front of her premises into which the contents of privy vaults and sewage has been deposited by any fault of the village of Richmond. For the foregoing reasons, defendant is entitled to a verdict.

" (2) A fair consideration of the entire case shows conclusively that the testimony in favor of the defendant's claim is so overwhelming that if a verdict were rendered in favor of the plaintiff, it would be the duty of the court to set the verdict aside.

" (3) The nuisance complained of existed at plaintiff's premises in the township of Lenox. It is not seriously

claimed that the defendant village is liable because the condition of the ditches in front of plaintiff's premises was the result of any wilful or knowing act of the defendant, but it is sought to hold the defendant responsible, because it is claimed that the village authorities had notice of the existence of a nuisance on Howard street in said village, just back of Springborn's hotel, and also notice that said nuisance on Howard street had caused and created the one claimed to exist in the township of Lenox, in front of plaintiff's premises. It is a rule of law that one who does not knowingly or wilfully create a nuisance, but passively permits one to exist after knowledge thereof, can only become liable for any damage resulting therefrom after notice of its existence and notice that it is causing the damage complained of, which notice must be given a sufficient length of time prior to the injury to permit a reasonable opportunity to remove or abate the nuisance. Plaintiff's own proofs show that whatever condition that amounted to a nuisance existed in the highway in front of her house had existed since 1896, and that if her sickness was caused by the condition of the ditch at all, it was caused prior to the spring of 1905, her contention being that a weak and debilitated condition, arising from long-continued presence of the noisome, noxious, etc., stenches in front of her house, brought about the subsequent sickness and ill health, or, in other words, that all of her trouble in 1904–5–6–7 and 8, including her operations, resulted from a weak and debilitated condition brought about by her being subjected, for years prior thereto, to the offensive vapors from this ditch. The proof is conclusive that no notice of the existence of any trouble whatever in front of plaintiff's premises was given to the village until December, 1904, at which time, if the condition of the ditch was responsible for plaintiff's ill health, the damage had been done. No such notice of the condition of the ditch in front of plaintiff's premises is shown to have been given to the defendant that would warrant defendant being held liable for damages resulting to plaintiff from the condition of the ditch. Particularly is this true, inasmuch as plaintiff claims no damage for aggravation of any pre-existing trouble. The notice required to make the village liable for a bad condition of the ditch in question, even if such bad condition existed as the result of a nuisance in the village, of which the vil-

lage had notice, must be such a notice as would fairly apprise the village of just the conditions that existed, where they existed, and that plaintiff claimed injury, or possible injury, therefrom."

The first request seems, in its last analysis, to rest upon the claim that the evidence upon the only question which defendant's counsel conceive to be left in the case was overwhelmingly in favor of defendant's position. There was certainly a dispute in the evidence on the subject, and it follows that it was proper to leave it to the jury. We have said this so often, that it is unnecessary to cite authorities.

The second request should not have been given. The duty of the court as to granting a new trial has never been an infallible test of the propriety of submitting a case to the jury. It might be a good rule for many cases, though that is open to doubt. At all events, the law has never been so settled.

The third request was properly refused, for the reason that the facts upon which it was based were in dispute.

**Motion for New Trial.** In this motion, counsel have alleged several grounds, which may be resolved into two: *First*, the verdict was contrary to the law, and against the weight of the evidence; *second*, that the court erred in omitting from his instruction specific direction as to notice.

As to the former, we agree with the learned circuit judge that no new trial was called for on either ground. In relation to the latter, it is enough to say that no proper request is called to our attention, and error appears to have been assigned on what the judge did say, and consequently can be reviewed on error. The motion was properly denied.

**Refusal to State Defendant's Claim.** With some reluctance we incorporate the fourth request in our opinion:

"(4) It is the claim of the defendant village that it is in no manner or form at fault for any trouble, injury, or sickness from which the plaintiff claims to have suffered

It is defendant's claim that the village of Richmond is situated in an extremely level tract of land, where drainage is very difficult, that no running creek, stream, or water exists in the vicinity of said village, that said village of necessity has no sewer system, or any system of drainage into which water-closets should be drained, nor has it ever had or adopted any plan of drainage whatever, and that practically its only drains consist of open ditches, or gutters, on the sides of the streets, constructed for the sole purpose of surface drainage. The defendant further claims that it has never, at any time, permitted any person to connect any privy, vault, sink, or other source of filth with any of said open drains or gutters. Defendant claims that the only covered drains within its corporate limits are a county drain running through the northern and western portion thereof, constructed of 10 or 12-inch crock and portions of the roadside ditches, or gutters, on several of its streets that have been tiled by it for short distances. Defendant further claims that, as a matter of fact, no privy, vault, or water-closet has ever been connected with any drain within its corporate limits, except in the instance in which several citizens were found to have connected privies with said county drain, and in that instance the citizens were proceeded against in court and compelled to cut out said connection, although one of the alleged offenders was, at that time, president of said village. Defendant further claims that the southeastern portion of the village, lying south and east of the Grand Trunk Railway tracks, is naturally very low, and that the site of the school in said village, situated on Howard street, is a particularly low spot. Defendant further claims that the natural drainage of that portion of the village is through a natural water-course in a northeasterly direction to the town line road between Richmond and Lenox, and thence easterly along said town line road, and that for over 40 years a ditch of sufficient size to carry away all of the water that came to it has been in existence along the north side of said road, carrying said water to the east to an adequate outlet beyond the limits of Macomb county, and that a ditch has existed for more than 20 years on the south side of said highway which ran to a point about 60 rods east of plaintiff's premises, where it crossed the road through a culvert into the north ditch. Defendant claims that the plaintiff's premises are situated in the line of said natural water-course, at the lowest portion thereof, on the

south side of said town line road in the township of Lenox, outside the eastern limits of the said village of Richmond. That previous to 1903 the principal portion of the water from that part of the village just mentioned drained into a ditch on Howard street, and thence into the ditches on the town line road. That prior to 1903, a swale extended across plaintiff's land and onto adjoining property. That in 1903 Ferdinand Springborn, who owned 20 acres adjoining plaintiff on the west, constructed a ditch upon his premises, draining a portion of this swale and carrying the water to the town line ditch on the south side of the road, and that at or about the time of the construction of this ditch Springborn, who was then overseer of highways in the district in which both plaintiff's land and his own were situated, with the consent of plaintiff and at the suggestion of her husband, moved a then existing culvert crossing the town line road in front of plaintiff's premises to a point about 225 feet to the west. That as a result of the digging of this ditch, a large portion of the water from the swale was taken from the rear part of plaintiff's premises and carried to the town line ditch in front of her place. At about the time of the completion of this ditch by Springborn, the defendant village caused to be cleaned out and deepened the ditches from the schoolhouse property on Howard street to Lenox, and thence along Lenox, Seymour, and Davis streets to a ditch then existing across lands of one John Schock, to the east corporation line of the village, and there connected the same with the Springborn ditch, thereby more thoroughly draining the section of the village in the vicinity of said school premises. That in 1896 said Ferdinand Springborn erected a hotel known as the "Lenox Hotel," and constructed in the rear thereof a cesspool, into which he emptied the contents of the water-closet in said hotel. This cesspool was constructed of plank, was 9 feet square and 11 feet deep, with no bottom but the earth, which at that place was gravel. That an overflow pipe four inches in diameter, the entrance to which was covered by a wire screen with one-quarter inch meshes, entered the cesspool opposite the intake pipe and $1\frac{1}{2}$ feet from the top. This overflow pipe was about 125 feet long and ran to the rear of Springborn's premises. Defendant further claims that it appears that said cesspool was disinfected by the use of chloride of lime and copperas. Defendant insists and claims that it never authorized or gave permission to, in any form or manner,

connect said cesspool with the drain on Howard street, or in any other drain or ditch in said village, and that said village never had knowledge that said cesspool or said overflow pipe therefrom was connected with its drains, and that no official of said defendant village was ever notified that any connection existed or was claimed to exist between said cesspool and any of its drains until the spring of 1905, when plaintiff's husband, George Wendt, informed O. B. Evans, then president of the village, that he claimed this cesspool injured him. It does appear that plaintiff complained to Dr. Black, then president, in 1904, that the water from the village was contaminating her well, and in June, 1905, she complained to President Evans that her well was contaminated, that she had no water to drink, and that she wanted her premises connected with the village system of waterworks. Defendant insists that there has never been any claim or notice to the village prior to the commencement of this suit that the plaintiff was made sick and injured by odors or smells from any nuisance in front of her premises caused by any fault of said village. It is defendant's claim and theory that the sickness, pain, and trouble from which she suffered has been in no·manner or form the result of any fault on the part of the defendant, and it is further the claim of the defendant that no sewage or filth was ever deposited in front of, upon, or adjacent to, the plaintiff's premises from the Springborn cesspool, or any other source within the limits of said village. It is the defendant's claim that if any filth or sewage was ever deposited in front of plaintiff's premises from which odors or stench arose, that the filth came from plaintiff's own premises, and that if plaintiff's sickness came from or was caused by unsanitary conditions surrounding her house, it came from the naturally unsanitary condition of the premises she lived upon, aggravated by plaintiff's own negligence in permitting water to stand under her house, her own privy to drain through an open ditch to the front of her premises, the slops from her house to accumulate in a hole close to her well, and the barn, pigpen, etc., to drain to the front of the house."

This statement is about as long as the charge given and is practically a statement of counsel's argument. Moreover, it contains many statements of fact which were in dispute and which it would have been error to give. A

judge should, and generally will, give instructions applying the law to any theory of prosecution or defense that is in the case, which is all that should be asked in a case of disputed facts.

We have often criticised unfavorably such requests as this. There was no error in refusing to give this request. *Fisher* v. *People*, 20 Mich. 135; *People* v. *Marion*, 29 Mich. 31; *People* v. *Hubbard*, 92 Mich. 327 (52 N. W. 729); *Westra* v. *Westra*, 101 Mich. 528 (60 N. W. 55); *People* v. *Parsons*, 105 Mich. 188 (63 N. W. 69).

**Contributory Negligence.** Defendant's eleventh request was not given. It follows:

"(11) That plaintiff cannot recover if her trouble was due to her own fault, or if by reasonable care she could have protected herself and avoided evil results from the alleged nuisance."

The court charged the jury that defendant claimed that plaintiff's illness and injury were caused by the foulness of her well, cellar, and premises generally, and also that she could not recover if they should find that—

"Plaintiff's premises were kept in an unsanitary condition and materially contributed to the creation of the alleged nuisance and to plaintiff's injury, then your verdict will be for defendant."

Our attention has not been called to any evidence indicating that by reasonable care she could have protected herself or avoided the effect of the alleged nuisance, nor is the brief any more illuminating upon the subject. If it refers to a duty to keep her own premises in better condition, it was sufficiently covered by a denial of recovery, if such condition contributed materially to the injury. That was fully as favorable a charge as the defendant was entitled to on that subject.

**Notice.** We are of the opinion that the court's instruction upon the subject of notice was sufficient.

**Damages.** Several assignments relate to the subject of damages. We find nothing in these or some other as-

signments not specifically mentioned by us which should cause us to reverse this cause. As it is, we have referred to some assignments, to which there is little, if anything, more than an allusion in the brief of counsel. A careful pointing out of the precise point and a clear reason for the claim of error are of much assistance to the appellate court. While we do not discuss at length some of these, we have examined all and endeavored to give them careful consideration.

We find no error, and the judgment is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, and STONE, JJ., concurred.