VIVIANO, J.
(concurring in part and dissenting in part). I concur with the majority that defendants Robert and Marilyn Truman are entitled to dismissal because they are not liable for the nuisance at issue. I write separately because I disagree that this case can be decided as a matter of law on the issue of defendants’ control over the land from which the nuisance arose. But I would reach the same result because I believe that defendants’ lack of knowledge of the nuisance provides an alternative basis for dismissal.
In our order directing oral argument on defendants’ application for leave to appeal, this Court directed the parties to address “whether, and under what circumstances, a property owner who is not in possession of the property and does not participate in the conduct creating an alleged nuisance may be liable for the alleged nuisance.”[1] I believe that the answer to this question is best stated in 58 Am Jur 2d, Nuisances, § 95, which recognizes a requirement to show both control and knowledge before imposing liability for absentee owners, like defendants: “A person is liable if he or she knowingly permits the creation or maintenance of a nuisance on premises of which he or she has control. .. even though such person is not physically present, such as where he or she is an absentee owner.” Applying that rule here, I believe that there is a question of fact whether defendants, even though ab *19 sentee owners, retained sufficient control over the land to be held liable for the alleged nuisance. But I would hold that summary disposition in their favor was proper because they had no knowledge of the nuisance on the premises.
I. CONTROL
I agree with the majority that “control is required in order to hold a defendant liable for a nuisance ... .”[2] As the majority also appears to recognize, control over the property may be established “either through ownership or otherwise.”[3] However, because control may be established through proof of ownership, I disagree with the majority that defendants cannot be liable as a matter of law on the ground that they “merely own[ed] the property.”[4] Instead, I believe that there is a question of fact regarding the extent to which defendants retained control and responsibility over the property.
There is evidence that someone other than defen *20 dants was in active control of the subject property. As the majority notes, Daniel Truman paid the property taxes, and defendants have not visited the property in more than a decade or maintained contact with Daniel Truman. Further, defendants have not profited from the farm and have not been involved in any aspect of Daniel Truman’s management of the farm. On the other hand, contrary facts were adduced that could support a finding that defendants retained sufficient control over the premises to be liable for nuisance: (1) defendants hold sole title to the property by means of a warranty deed executed by Daniel Truman’s ex-wife in 1989; (2) defendants supplied the financing for Daniel Truman to buy out his ex-wife’s interest in the land;[5] (3) defendants maintained insurance on the property at the time the accident took place; (4) defendants took out a mortgage on the property in March 2010;[6] and (5) the terms of that mortgage required defendants to maintain the property and prohibited them from permitting a nuisance on the property, abandoning the property, or leaving it unattended.
Given the foregoing facts, I believe that the fact of title ownership — when coupled with defendants’ financial leverage over Daniel Truman, their insurance interest, and the commitments they made in the 2010 mortgage — created a genuine issue of material fact *21 regarding the degree of control that defendants retained over the property.[7] In my view, these facts evidence that defendants may have been more than *22 “mere landowners.”[8] Thus, I do not believe that we can decide as a matter of law that plaintiff has provided sufficient evidence to survive summary disposition on the issue of control.
II. KNOWLEDGE
Despite the foregoing, I agree with the majority that defendants are entitled to summary disposition because even if defendants had control over the land, their lack of knowledge of the alleged nuisance provides an alternate basis for dismissal.
The general rule in nuisance law is that “[a] landowner is subject to liability for a nuisance created by the activity of a third party on the land if the owner knows, or has reason to know, that the activity is causing, or will cause, an unreasonable risk of nuisance, and the landowner consents to the activity or fails to exercise reasonable care to prevent the nuisance.”[9] And, as noted above, this liability extends to absentee owners, like defendants, if they knowingly permit a nuisance: “A person is liable if he or she knowingly permits the creation or maintenance of a nuisance on premises of which he or she has control.. . even though such *23 person is not physically present, such as where he or she is an absentee owner.”[10]
Unlike some other jurisdictions, this Court has never explicitly held that knowledge is a required element of a nuisance claim.* [11] However, requiring knowledge is not a novel concept in our common law. More than a century ago in Wendt v Village of Richmond,[12] the plaintiff brought a nuisance claim against the defendant village, alleging that the defendant had knowingly permitted sewage to collect in water run off ditches in the vicinity of the plaintiffs home. On appeal, although denying any knowledge of the condition, the defendant conceded *24 that “[i]t is a rule of law that one who does not knowingly or wilfully create a nuisance, but passively permits one to exist after knowledge thereof,” can be liable after notice and reasonable opportunity to abate the nuisance.[13] And this Court approved this rule when it confirmed the sufficiency of the trial court’s instruction on knowledge, which provided, “[I]f the defendant caused, or knowingly permitted, these things to be collected by its ditches and conveyed to plaintiffs premises ... it would be liable, after the lapse of a reasonable time within which to remedy the condition . . . .”[14] Thus, the unremarkable proposition that knowledge is required to impose nuisance liability does not appear to be inconsistent with, or a modification of, Michigan’s common law, but merely the recognition of an established requirement.[15]
Indeed, knowledge is a crucial element in circumstances in which a third party creates a nuisance. When *25 it is demonstrated that a landowner retains the legal right to resume control over the subject property and has knowledge of a nuisance created by a third party, that owner is bound to use all reasonable means within his or her power to abate the nuisance.[16]
In this case, however, as even the majority acknowledges, there is no evidence that defendants knew or should have known about the elopements. Contrary to the Court of Appeals’ assertion, there is no evidence that defendants were aware of the farm animals’ tendency to escape in the 10 years before the accident. Therefore, even if they had the requisite control over the land, defendants cannot be liable because they had no knowledge of the nuisance.[17]
III. CONCLUSION
In sum, although I agree with the majority that control is the critical inquiry for nuisance liability, I disagree that dismissal is warranted on that ground when defendants’ ownership of the property, taken together with other facts in the record, creates a question of fact on the issue of control. I would conclude that summary disposition was nevertheless appropriate on the alternative basis that there is no genuine issue of material fact on the issue of knowledge, which is a necessary element for nuisance liability.

 In re Sholberg Estate, 494 Mich 867 (2013).

 Ante at 11. See 58 Am Jur 2d, Nuisances, § 91, p 640 (stating the general rule that “dominion and control over the property causing the harm is sufficient to establish nuisance liability”); see also 58 Am Jur 2d, Nuisances, § 95, p 643(“A party who has no control over the property at the time of the alleged nuisance cannot be held liable therefor.”).

 58 Am Jur 2d, Nuisances, § 95. See ante at 12.

 Ante at 14. Although I agree that ownership may not he dispositive of control in some cases (for example, when control is ceded by means of a lease or land contract), I cannot agree with the more general assertion that proof of ownership will never he sufficient to establish control. Rather, I believe that in many cases proof of ownership will be sufficient to establish control because the title owner typically has the right to control and dispose of the property. See Taylor et al, Michigan Practice Guide: Torts, § 1:816 (2004) (“A landowner will usually have sufficient control to he liable for a nuisance!.]”); Eastbrook Homes, Inc v Dep’t of Treasury, 296 Mich App 336, 348; 820 NW2d 242 (2012) (stating that “ ‘title,’ is defined... as ‘[t]he union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property’ ”).

 Although Robert Truman allegedly had a land contract drafted, there is no evidence of that document in the record, and Robert Truman and Daniel Truman testified that the document was never executed.

 In his deposition, Robert Truman claimed that he actually intended to take a mortgage on a different parcel of land that he owned on Stutsmanville Road. He asserted that the fact the mortgage was taken on the 5151 Stutsmanville Road property was an error at the bank. While this alleged error could refute that defendants had control over the property by means of the mortgage agreement, I believe that the import of the written agreement and credibility of Robert Truman’s statements should be resolved by the trier of fact.

 It is the primary obligation of a landowner to keep his premises from becoming a public nuisance. See Kern v Myll, 80 Mich 525, 530-531; 45 NW 587 (1890); see also Alabama ex rel Bailes v Guardian Realty Co, 237 Ala 201, 205-206; 186 So 168 (1939). In this regard, “[a]n owner of property on which a nuisance is being conducted may be made a party defendant, along with the one conducting the nuisance.” 58 Am Jur 2d, Nuisances, § 326, p 822; see 58 Am Jur 2d, Nuisances, § 94, p 642. Therefore, the current question in this case is not, as the majority suggests, whether Daniel Truman was responsible for the nuisance, but whether defendants may also be liable as landowners who retained a sufficient right to control the land to abate the nuisance.
The majority relies on Musser v Loon Lake Shores Ass’n, 384 Mich 616, 622; 186 NW2d 563 (1971), for the proposition that “a person is liable only as he participates in an activity giving rise to a tort.” However, that case, like many of the cases the majority cites, is distinguishable because it involved a premises liability claim, which is legally distinct from a nuisance claim. Under nuisance law, a party may be liable when it owned and controlled the property, even if that party did not actually create the nuisance. See Radloff v Michigan, 116 Mich App 745, 756-759; 323 NW2d 541 (1982). Further, the majority relies on Merritt v Nickelson, 407 Mich 544, 554; 287 NW2d 178 (1980), another premises liability case, for the proposition that the actual exercise of control over the property is required to impose nuisance liability. In that case, unlike his co-owner, the invitor was liable because he alone exercised control over the land, and by doing so assumed a duty of care to those he invited to the land. See Merritt, 407 Mich at 551, 553-554. But under nuisance law, a plaintiff need only show that the landowner had the right to control the property. See Randall v Delta Charter Twp, 121 Mich App 26, 34-35; 328 NW2d 562 (1982) (holding that the plaintiff failed to state a nuisance claim because he “failed to allege that [the defendant] . . . had any interest in or right of control over the property”) (emphasis added).
The majority opinion holds that absentee owners who, by virtue of their absence, have not actually exercised control over the property during the relevant time period are not hable for nuisance. I disagree with that holding because I do not believe that nuisance liability for absentee landowners turns on the actual exercise of control. Rather, even if an absent landowner does not actually exercise control over the property, the landowner may still be hable for nuisance when he or she retains a right to control the property sufficient to abate the nuisance. See e.g., Maynard v Carey Constr Co, 302 Mass 530, 533; 19 NE2d 304 (1939).

 If defendants could show that, despite their status as title owners, they ceded control through a properly executed lease or land contract, then summary disposition may well have been in order. No party alleges that a landlord-tenant relationship existed in this case; however, defendants do assert that they sold the property to Daniel Truman on a land contract. Even so, absent a written agreement, and in light of the contrary evidence, I cannot conclude that a land contract existed as a matter of law. See Cowles v Bank West, 476 Mich 1, 5, 37; 719 NW2d 94 (2006) (stating that summary disposition under MCR 2.116(0(10) is improper where material questions of fact exist).

 58 Am Jur 2d, Nuisances, § 96, p 643 (emphasis added). See also 66 CJS, Nuisances, § 121, pp 702-703 (“[T]he bare fact of ownership of real property imposes no responsibility for the nuisance unless the owner ... has knowledge of the nuisance on his or her property.”)

 58 Am Jur 2d, Nuisances, § 95, p 643 (emphasis added). The knowledge requirement also applies to possessors and lessors. See Wagner v Regency Inn Corp, 186 Mich App 158, 163-164; 463 NW2d 450 (1990), citing 4 Restatement Torts, § 838, p 157 (“A possessor of land upon which a third person carries on an activity that causes a nuisance is subject to liability for the nuisance if.. . the possessor knows or has reason to know that the activity is being carried on ....”) (emphasis added); 4 Restatement Torts, 2d § 837, p 152 (“A lessor of land is subject to liability for a nuisance caused by an activity carried on upon the land ... if... at the time of the lease the lessor ... knows or has reason to know that it will be carried on, and (b) he then knows or should know that it will necessarily involve or is already causing the nuisance.”) (emphasis added). See also 58 Am Jur 2d, Nuisances, § 97, p 644.

 See, e.g., Tennessee Coal, Iron & R Co v Hartline, 244 Ala 116, 124; 11 So 2d 833 (1943) (“[Landjowner may be liable for the continuance of a nuisance when he has knowledge thereof although it was created by the act of an unauthorized person.”) (emphasis in original); Louisville & N R Co v Laswell, 299 Ky 799, 805; 187 SW2d 732 (1945) (“A person is liable if he knowingly permits the creation or maintenance of a nuisance on his premises.”); Rockport v Rockport Granite Co, 177 Mass 246, 255; 58 NE 1017 (1901) (“[A]n owner is bound to see to it that his land is so managed by persons brought on to it by him, as not to cause injury to others” and if “he suffers [a nuisance] to remain there, he is hable to any one injured thereby, at any rate when he knows of the existence of the thing which constitutes the nuisance.”); Grant v Louisville & N R Co, 129 Tenn 398, 404; 165 SW 963 (1914) (“The owner cannot be liable in respect to ... a nuisance [on his land] unless he has some knowledge of it. . ..”).

 Wendt v Village of Richmond, 164 Mich 173; 129 NW 38 (1910).

 Id. at 177. See also Tennessee Coal, 244 Ala at 121.

 Wendt, 164 Mich at 175, 182.

 Suffice it to say, I disagree with the majority’s assertion that recognizing a knowledge requirement would require a modification of our common law. The rule that knowledge is required to impose liability on landowners for a nuisance created by a third party appears to be the unanimous position of the courts and commentators that have addressed the issue, including our Court in Wendt and the Court of Appeals in Wagner. The majority also asserts that “the parties themselves have not even asked that the common law be modified by adding the element of knowledge ....” Ante at 13 n 10. However, plaintiff has never explicitly asked that the common law be modified to add a knowledge element because her position since the inception of this case has been that knowledge is already a recognized element of nuisance liability. Defendants did not disagree with this position until their briefing before this Court. Before reaching this Court, defendants consistently accepted that knowledge was required. For example, in their Court of Appeals brief, defendants conceded that “a title holder can only be held liable for a nuisance if he knows about it and fails to exercise reasonable care,” citing Wagner, 186 Mich App at 163-164.

 See Maynard, 302 Mass at 533 (stating that when the defendant landowner allowed a third-party to use the land, “after . .. notice [of the nuisance] it became the duty of the defendant, as . .. [the] owner who could resume control at will, to use all reasonable means within its power to abate the nuisance”).

 I disagree with the majority’s assertion that knowledge is relevant evidence of control. A defendant who creates a nuisance will most likely have both knowledge and control of the nuisance. However, when, as in this case, a third party creates a nuisance, whether a defendant landowner has knowledge has no bearing on whether the landowner has sufficient control to abate the nuisance.